DEPARTMENT OF INSURANCE OF INDIANA ET AL. *v.*
NOBLESVILLE BROTHER-SISTERHOOD ET AL.

[No. 17, 571. Filed April 11, 1947. Rehearing Denied May 23, 1947. Transfer Denied June 24, 1947.]

528

*James A. Emmert,* Attorney General, *Cleon H. Foust,* First Assistant Attorney General, and *Byron C. Kennedy,* Deputy Attorney General, for appellants.

*Campbell & Campbell,* of Noblesville, for appellees.

ROYSE, J.—Appellee Noblesville Brother-Sisterhood (hereinafter referred to as appellee) is a voluntary unincorporated society of 500 individuals. Article I of its Constitution provides it shall be sponsored by the Noblesville United Brethern Church. Its objectives are set out in Article II of this Constitution which provides as follows:

"The objectives of this organization shall be: 1. Personal Evangelism; 2. Home visitation and Relief; 3. Christian Stewardship and Tithing; 4. Better Church Attendance and Church Loyalty; 5 Social Activities; 6. Bible Study; 7. Community Welfare; 8. Promotion of Teen-age Boy and Girl Activities; 9. Building up Larger and Better Sunday Church Schools; 10. Providing for each member

Death Benefits including the entire sum in the Death Benefit Fund (except as stated in Amendment No. 3)."

Article III provides, in substance, any one of good moral character between the ages of 16 and 60 years, if in average good health, who is recommended by the investigating committee and is elected by a majority of members present at a regular meeting, shall be entitled to membership, which, by this section, is limited to 500.

Article IV provides all officers shall be members of the Noblesville United Brethern Church.

Articles V and VI relate to committees and duties of officers, etc., not pertinent to the question here presented.

Article VII relates to benefits and, in part, provides as follows:

"Everyone applying for membership in this Organization must pay one dollar at the time of his application, which, if and when elected, shall be turned into the Death Benefit Fund; otherwise the dollar shall be returned to the applicant. When cards for applicants are filled out, full name of applicant, correct mailing address, exact date of birth, name and address of beneficiary, name of solicitor, statement as to whether or not life insurance has ever been refused applicant, and date of application must be given. These cards will all be kept on file by the Secretary.

"When any member of this organization dies, the beneficiary shall receive the total amount due them as soon as possible.

"Another assessment of one dollar per member is immediately due at the death of a member, and within fifteen days from the notification of any member, if this benefit assessment is not paid, his name may be dropped from membership. Although delinquent, he or she is still a member until the name is dropped at some future meeting. If two or more members should die within the fifteen days,

then fifteen days will be given to collect the assessments in each case.

"A waiting list of not more than 100 names of those who have made advance deposits, and who have already been elected for membership subject to vacancies, will be used to fill such vacancies in the membership. . . . ."

The following amendment was adopted to this Constitution:

"After July 4, 1939, ALL NEW applicants for membership up to fifty years of age, shall receive full benefits; those over fifty shall receive one-half of the regular benefits. Full benefits shall be as stated in the original constitution, a total of one dollar per member in good standing. When there is a surplus in this fund sufficient to pay a benefit, it shall be so used, and no assessment shall be made for that death."

The facts out of which this controversy arose may be summarized as follows: Appellee was organized in February, 1938. From said time its membership varied but at no time exceeded 500. Applicants for membership were required to sign an application containing a statement of age, physical condition, etc. No physical examination was required. Appellee maintained two funds—a general expense fund maintained from annual membership fees of $1.00 per year, and a death benefit fund which was raised by an assessment of $1.00 from each member within 15 days from the notification of the death of a member. There are two classes of membership, Class "A" and "B". All members have equal rights and privileges except as to participation and/or distribution of the death benefits. Class "A" is composed of all who were members prior to July 5, 1939, and all who have become members since said date and were under 50 years of age at the time of becoming

members. They are entitled to full death benefits, viz. $1.00 per member in good standing. Class "B" includes those who have become members since said date and were over 50 years of age at the time of becoming members. They are entitled to one-half the regular benefits. That appellee has paid all claims of beneficiaries in accord with its Constitution. That appellee is not now and never has been operated for pecuniary profit.

On or about November 18, 1943, appellee received the following order from appellants:

"WHEREAS, the Commissioner of Insurance, and said Deputy Commissioner have now duly advised themselves;

"Therefore, said Commissioner and said Deputy now find that The Noblesville Brother-Sisterhood is doing an assessment burial benefit business, paying a burial benefit of $500.00, more or less, upon the death of any member, that said society or group is not organized or licensed as an insurance organization under the laws of the State, and is outside the exemption of Section 207 of the 1935 Insurance Code which permits religious, charitable and benevolent groups to provide burial benefits not to exceed One Hundred ($100.00) Dollars.

"THEREFORE: BE IT ORDERED

"1. The Noblesville Brother-Sisterhood shall immediately cease and desist from paying burial benefits and making assessments upon members to pay the same unless said payments be One Hundred ($100.00) Dollars or less.

"2. Said order shall not affect the other benevolent, religious or charitable activities of your group, which are praiseworthy, but only affects your activities in assessing and paying burial benefits in excess of One Hundred ($100.00) Dollars."

Subsequently, appellees brought this action against appellants under the Declaratory Judgment Act, § 3-

1113, Burns' 1946 Replacement, asking the court to construe § 207, Acts 1935, p. 588, § 39-4427, Burns' 1940 Replacement, to the effect that they are within the provision exempting societies which do not issue insurance certificates, and which provide death benefits not exceeding $500. The trial court entered judgment in favor of appellee. This appeal followed.

In order to obtain a decision on the merits, appellants have waived the question presented by the first assignment of error, which challenges the ruling of the trial court on the demurrer to the complaint. This leaves only the question of the trial court's action in overruling appellants' motion for a new trial, which questioned the sufficiency of the evidence and the legality of the verdict.

We are of the opinion appellee is subject to the provisions of the Indiana Insurance Law, §§ 2, 3, Acts 1935, §§ 39-3202, 39-3203, Burns' 1940 Replacement, unless exempted by § 39-4427, *supra,* which provides as follows:

"Nothing contained in this act shall be construed to affect or apply to (a) grand or subordinate lodges of Masons, Odd Fellows or Knights of Pythias (exclusive of the insurance department of the Supreme Lodge Knights of Pythias) and the Junior Order of United American Mechanics (exclusive of the beneficiary degree of insurance branch of the National Council Junior Order United American Mechanics), (b) or to societies which admit to membership only persons engaged in one (1) or more hazardous occupations, in the same or similar lines of business, (c) *nor to similar societies which do not issue insurance certificates (d) nor to an association of local lodges of a society now doing business in this state which provides death benefits not exceeding five hundred dollars ($500) to any one (1) person,* or disability benefits not exceeding three hundred dollars ($300) in any one (1) year to any one (1) person, or

both, (e) nor to any contract of reinsurance business on such plan in this state, (f) nor to domestic societies which limit their membership to the employees of a particular city or town, designated firm, business house or corporation, *(g) nor to domestic lodges, orders or associations of a purely religious, charitable and benevolent description, which do not provide for a death benefit of more than one hundred dollars ($100), or for disability benefits of more than one hundred and fifty dollars ($150) to any one (1) person in any one (1) year.* The department may require from any society such information as will enable it to determine whether such society is exempt from the provisions of this act. Any fraternal beneficiary association, organized under this article or any other law or laws of this state, providing for benefits in case of death or disability resulting solely from accidents, but which does not obligate itself to pay death or sick benefits, may be licensed under the provisions of this act, and shall have all the privileges and shall be subject to all the provisions and regulations of this act, except that the provisions of this act requiring medical examinations, valuations of benefit certificates, and that the certificate shall specify the amount of benefits, shall not apply to such society." (The letters and emphasis are ours).

Appellants contend if any of the provisions of this section of the statute apply to appellee it is the provision which we have designated as subdivision (g). While appellees contend subdivision (c) and/or (d) above are applicable to them. It will be noted (c) refers to "similar societies which do not issue insurance certificates". Appellee does not issue insurance certificates. Unquestionably the term "similar societies" refers to the preceding exemptions, viz. (a) and (b). The question then presents itself— Is appellee a society "similar" to those referred to in (a) and (b)? "Similar" is defined in Webster's New International Dictionary as: 1. Nearly corresponding;

resembling in many respects; somewhat like; having a general likeness. 2. Homogeneous; uniform. Subdivision (a) exempts certain named fraternal organizations. We are of the opinion the word "similar", as used in (c), when considered with (a) refers to other fraternal organizations of the kind specifically named therein, such as the Elks, Moose or Knights of Columbus. We do not believe appellee is a society or organization of this type. It is conceded by appellee that it is not similar to the societies exempted by (b). Therefore, we hold the exemption provided by (c) does not apply to appellee.

Subdivision (d) exempts "an association of local lodges of a society now doing business in this state which provides death benefits not exceeding $500 It seems clear to us this refers to a union or federation of more than one local lodge of a society which is organized on either an intrastate or national basis. Furthermore, appellee was not authorized to do business in this state when this Act was passed in 1935. This subdivision of the exemption is the only one which places a $500 limit on the payment of death benefits. We do not believe appellee is within this exemption.

We are of the opinion appellee is the type of organization referred to in subdivision (g). Therefore, it cannot obtain the benefit of the exemption so long as it pays death benefits in excess of $100. In reaching this conclusion we are neither approving nor disapproving the wisdom of the policy enunciated by this Act. That is a matter exclusively within the province of the Legislative Department of government.

As no useful purpose could be served by ordering a new trial of this cause, the judgment of the Hamilton

Circuit Court is reversed with instructions to enter judgment for appellants in accord with the views herein expressed.

HAMILTON, P. J.—Not Participating.

NOTE.—Reported in 72 N. E. (2d) 240.